## In re SWEETSER.

(District Court, D. Massachusetts. June 19, 1907.)

No. 7811.

1. BANKRUPTCY ⬤=131 — ASSIGNEE — DISQUALIFICATION — ACQUISITION OF CLAIM.

Mere ownership by an assignee in bankruptcy of a claim against the bankrupt estate, although acquired after the bankruptcy, does not disqualify him under Bankr. Act March 2, 1867, c. 176, 14 Stat. 517, where prior to its acquisition the claim had been allowed without opposition, and the transaction was fair and in good faith, and the claim was not brought for speculative purposes.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 192; Dec. Dig. ⬤=131.]

2. BANKRUPTCY ⬤=132—ASSIGNEES—REMOVAL.

Facts *held* not to require, nor to render expedient, the removal of assignees in bankruptcy, under Bankr. Act March 2, 1867.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 190; Dec. Dig. ⬤=132.]

3. BANKRUPTCY ⬤=337—TRANSFER OF CLAIM—EFFECT OF ALLOWANCE BY REGISTER.

The allowance by the register of the transfer of a claim against a bankrupt estate under Bankr. Act March 2, 1867, is binding upon other creditors, who might have opposed it, whether they did so or not.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ⬤=337.]

In Bankruptcy. In the matter of Elbridge L. Sweetser, bankrupt. On petition for removal of assignees, and objections to petition of F. Joy to be subrogated to claim proved by Dolliver and others against the bankrupt estate. Petition for removal denied, and objections to petition of F. Joy sustained.

See, also, Kyle v. Hammond, 192 Fed. 559, 113 C. C. A. 31.

Hollis R. Bailey, of Boston, Mass., for petitioner.
Fred Joy, of Boston, Mass., for Wm. B. H. Dowse.
Warren O. Kyle, of Boston, Mass., pro se.

DODGE, District Judge. The proceedings in this case were instituted in 1878, prior to the repeal of the act of 1867. They are governed by that act, which as to them is continued in force by the repealing Act of June 7, 1878, c. 160, 20 Stat. 99.

[1] This petition to remove the assignees was filed September 27, 1901. September 30, 1901, the court referred it to the register, to ascertain facts and report. The assignees' answer was filed before the register May 20, 1902. The register's report, dated March 17, 1903, was filed in court December 8, 1903. He was of opinion that the charges made in the petition were not so sustained as to require removal of the assignees. No further steps were taken toward obtaining either the granting or dismissal of the petition, until March of the present year, when, upon the filing (March 6, 1907) of another petition by Hammond, the petitioner first named in the present petition, reiterating many of its

allegations in support of an application to the court to cancel the assignment of the Dolliver claim to which those allegations refer, made by Dowse to Joy April 24, 1901, and further considered below, I directed that the present petition be disposed of before proceeding under said petition of March 6, 1907. A hearing was had accordingly, March 30 and April 1, 1907, on the register's report of December 8, 1903, and the evidence taken before him.

The adjudication in the case was made on the bankrupt's own petition filed February 23, 1878. One of the present assignees, Mr. Dowse, was appointed March 23, 1878. The other assignee, Mr. Kyle was appointed December 16, 1882, upon the resignation of Mr. Dibble, originally appointed on the same day with Mr. Dowse.

The principal charge made in the petition to remove is:

"That said Dowse, acting simply for his own profit against the interest of the creditors, sought to buy up and take an assignment of the second largest claim against the bankrupt estate, to wit, the claim of Dolliver Bros., and is still asserting a title to and is seeking to have the benefits to be derived from the ownership of this claim; that said Kyle is acting in conjunction with said Dowse, and aiding and abetting him in the matter of his asserted ownership of said Dolliver claim."

The Dolliver claim here mentioned is a claim which William C. and John S. Dolliver proved against the bankrupt's estate on March 16, 1878. According to their proof of claim filed and allowed by the register on that day, the claim amounts to $2,478.31, and consists of balances remaining due on two notes signed by the bankrupt and one Friend. Copies of the notes and of the indorsements thereon are annexed to the proof. That Mr. Dowse has asserted the ownership of this claim to have been at one time in himself is undisputed, and appears from his own testimony given in the proceedings under a petition filed before the register by Frank K. Linscott on May 29, 1901, wherein Linscott, alleging that the claim had been assigned to him, asked for an order subrogating him to the Dollivers' rights. Fred Joy, alleging a prior transfer of the claim to Dowse and from Dowse to him, opposed Linscott's petition. The register, as he states in his report now under consideration, after a hearing on the issues thus raised between Linscott and Joy, at which hearing Dowse was a witness, found the evidence insufficient to prove a transfer of the claim to Dowse and granted Linscott's petition. This was on June 22, 1901, and thus matters stood when the present petition to remove the assignees was filed, on September 27, 1901. Had the referee's decision in Linscott's favor remained unreversed, the utmost that could be said would be that Dowse had sought at one time to buy the claim; it could not be said that he had ever bought it. But a recommittal to take further evidence was ordered, and although upon the further evidence the referee adhered to his first decision (June 18, 1904), the court on July 23, 1904, reversed the register. In Judge Lowell's opinion, dated July 18, 1904 (In re Sweetser, 131 Fed. 567), he held that a sufficient assignment to Dowse was established, and refused to subrogate Linscott. Linscott claimed an appeal on August 2, 1904, but the appeal was never perfected. This decision of the court, made, as above appears, a

year or more after the report of the register in the matter now before me, and now standing as a final determination of the issues raised upon Linscott's petition, is to be regarded as establishing for the purposes of this hearing, notwithstanding the register's report, the fact that Dowse did become owner of the Dolliver claim by a valid assignment from the Dollivers, after they had proved it against the estate. Further consideration is given below to the effect of this decision in connection with a still later report from the register, which deals with the assignment of the claim by Dowse to Joy, April, 24, 1901, and presents a question also raised at this hearing.

The petitioners contend that Dowse's acceptance of the transfer of the Dolliver claim, while acting as one of the assignees of the bankrupt estate, disqualifies him as assignee and requires his removal. It is said that "it is a fraud for an assignee in bankruptcy to purchase a claim for his own profit." Mere ownership by an assignee of a claim against the estate is of course no disqualification. A creditor might be, and often was, assignee under the act of 1867, provided only (Rev. St. § 5035) that he had received no preference contrary to the act. See In re Clairmont, 1 Lowell, 230, Fed. Cas. No. 2,781. In the present act no proviso barring preferred creditors is found. Under it a creditor may be and often is trustee. See In re Lewensohn, 98 Fed. 576. And so far as mere ownership of a claim against the estate is concerned, it would be difficult to say that ownership acquired after the bankruptcy must disqualify when original ownership is no disqualification at all.

The Dolliver claim was transferred to Dowse, as is found in Judge Lowell's opinion on July 18, 1904, in 1883. This was five years after the adjudication had been made, the assignees chosen, and the claim proved and allowed. So far as appears, the allowance of the claim was never opposed, there has been no attempt to re-examine it under Rev. St. § 5081, nor any reason to suppose that there has been or will be objection to its allowance, regarding it simply as a creditor's claim. While the act of 1867 did not bar claims not proved within a year, as does the present act, it might well be supposed in 1883 that all claims which would ever be offered had been proved. None have been proved since 1878. It is not suggested that Dowse acquired the claim in the interest of the bankrupt, or even that the bankrupt knew anything about its transfer. As to the creditor from whom Dowse obtained it, he has given testimony in corroboration of Dowse, in the contest upon the Linscott petition above referred to. No intimation is made by him that the transaction was not perfectly fair and honest, so far as he was concerned. There was an admitted balance, not determined, but less in any event than the face value of the claim, due from him to Mr. Dowse for professional services wholly unconnected with this bankrupt estate. Of his own accord, and with no suggestion from Dowse he proposed to make the transfer in question, in settlement. To this Dowse agreed. Dowse's position as assignee gave him no position of advantage over the creditor in the transaction. At the time there was extremely little reason to believe that the assignees would ever have any more assets of the estate to divide. All that they had previ-

ously collected had been accounted for and disposed of. The assignees were in no better position to judge of the probability that further assets would come to their hands than any one else. Not until the death on December 15, 1900, of the last surviving life tenant under the Richardson will, and not until after the termination, in the present year, of litigation begun in 1901, was their right to the bankrupt's interest under that will established. If the bankrupt had died before December 15, 1900, there would have been nothing to go to them under the will. See the agreed facts in Whittredge v. Sweetser, 189 Mass. 45, 75 N. E. 222, and Hammond v. Whittredge, 204 U. S. 538, 27 Sup. Ct. 396, 51 L. Ed. 606. Judge Lowell's conclusion in his opinion of July 18, 1904, that "the transfer to the assignee was in good faith, and was not procured by his misrepresentation or fraud" is without doubt the only possible conclusion on the evidence. The petitioners, indeed, have not attempted to show anything to the contrary.

None of the ordinary grounds, therefore, for regarding such a transfer of a creditor's claim as objectionable, exist in this case. The petitioners nevertheless contend that it is necessarily objectionable because of the mere fact that the transferee was an assignee of the estate. They contend that an assignee is a trustee for each and every creditor, and that the transfer was forbidden by the general principle, of course undeniable as a general rule of law, that a trustee may not occupy a position inconsistent with the interests of his trust, or which tends to interfere with his duty in discharging it.

The extent to which assignees in bankruptcy are trustees for each and every creditor is of course defined and limited by the duties which the act of 1867 imposes upon them. Those duties are to collect the bankrupt's property, turn it into money to the best advantage, and safeguard the fund realized until paid out by them in dividends as directed by the court. Of course they cannot buy the bankrupt's property; this would make them, whose duty it is to get as much as possible for what is sold, at once buyers and sellers. Of course they cannot acquire such claims upon or interests in the bankrupt's property as will, if established, reduce the fund which it is their duty to collect. Such claims and interests are adverse to their trust. Of course they may not make a private profit out of their administration of the trust fund, or the property from which it comes. But they are not charged with the duty of determining who are to be the beneficiaries of the fund, or in what proportions. As to the claims of creditors to share in the estate, the assignees have a standing to oppose their allowance, but the court decides whether they shall be allowed or not. The court, and not the assignees, fixes the dividends to be paid upon such creditors' claims as are allowed. Creditors' claims, once allowed, are adverse to each other, but not adverse to that interest of the creditors collectively whereof the assignees are trustees. On this point I agree with the register's opinion, who finds that, even if Dowse's purchase were to be sustained, "it does not appear that any interest in assets adverse to other creditors would be obtained thereby." Otherwise, no creditor could properly be assignee. If, therefore, the honest pur-

chase of a creditor's claim by an assignee is necessarily unlawful, it is not so by virtue of the general principle upon which the petitioners rely. If a profit to him is the result, it is not a profit made out of his doings as a trustee.

It is true that in certain English decisions relied on by the petitioners, such a purchase is declared unlawful and treated as ground for the assignee's removal. The two most in point are Ex parte Lacey, 6 Ves. 625 (1802), and Ex parte James, 8 Ves. 337 (1803). Other decisions of the same period are cited in Eden, Bankruptcy (2d Ed., 1826), p. 216, where their general effect is thus stated:

"Nothing is more firmly established than the general rule that an assignee, commissioner, or solicitor to the commission are incapable of purchasing property belonging to the bankrupt, or dividends under the commission."

The system of bankruptcy administration here in view is, of course, that in force in England in Lord Eldon's time, and this, it is evident, was a system differing widely from that with which we are here concerned. Much of what is said in these cases regarding the functions and powers of assignees could not be said of assignees under our act of 1867, to whom I am not satisfied that the decisions referred to, or the rule derived from them, can be fairly and justly applied. If there were ever reasons for treating the honest purchase of a proved and undisputed claim by an assignee as in the same category with a purchase by him of the bankrupt's property at an assignee's sale, I see no reason to believe that they exist here.

Pooley v. Quilter, 2 De Gex & J. 327 (1858), is also relied on; but, while that case repeats and relies on the doctrine of the earlier cases, it really turned, as it seems to me, on the fact that the purchasing assignee had important knowledge about the assets of the estate not imparted to the creditor whose claim he bought, and who, as complainant, was seeking to annul the transfer as a fraud upon him. It does not appear that in England at the present day an assignee is incapable of purchasing a creditor's interest in the estate, or will be removed because of the purchase, if, as here, he can prove that the purchase was bona fide, and a fair bargain as to the creditor who sells. Robson, Bankruptcy (7th Ed.) 613. The English authorities have been considered by Judge Lowell, as is manifest from his opinion. See 131 Fed. 567. It was with them in view that he found no sufficient reason to deny effect to the transfer to Dowse, a finding which I can hardly suppose possible, if acceptance of the transfer can be regarded as misconduct requiring Dowse's removal. No American authority is found for so regarding it, and in my opinion it is not to be so regarded, either on principle or on authority.

[2] If acceptance of the transfer is not ground for Dowse's removal, and if the transfer was valid as has been decided, reassignment of the claim to Joy is not ground for removal. Nor is there any ground for removing Mr. Kyle, so far as the transfer is concerned, against whom the only complaint in this connection is, that he "acted in conjunction with" Dowse, or "aided and abetted him in the matter of his asserted ownership of said Dolliver claim."

Coming to the other grounds for removal asserted in the petition, I cannot doubt that the register was right in holding the charge of re-

fusal to answer questions and the charge of refusal to furnish information not sustained by the evidence. There was nothing to show any attempt to conceal facts properly relating to the administration of the estate. In view of the circumstances under which the questions were put to him, I am unable to believe that Mr. Dowse deserves removal because he took the ruling of the court before answering them.

The register's refusal to find it proved that the assignees ever demanded $2,000 as a condition of their assent to a compromise of the various controversies wherein the estate was in one way or another involved, and his finding that the charge that they had objected to or opposed settlement from improper motives was not sustained were conclusions reached by him after hearing the conflicting evidence in support of and against those charges. I find no reason in the evidence reported for coming to any different conclusion. It cannot be supposed that, if all parties interested had ever really agreed upon a compromise, to which the assignees could not properly have objected for any reasons not relating to the question of their fees, the court, upon application to it, would have allowed that question to stand in the way. But it is not shown that there was ever any such agreement to any such compromise, and it is certain that there was never any attempt to represent any such situation of affairs to the court. In some of the controversies then pending a final result has been reached since the register reported on this petition. In one of them the result was against the assignees. In re Sweetser, 128 Fed. 165, affirmed on appeal in Dowse v. Hammond, 130 Fed. 103, 64 C. C. A. 437. But the Court of Appeals expressly declared in the latter case that it was reasonably incumbent upon the assignees to obtain the decision both of this court and the appellate court, and refused costs to the creditor because his method of proceeding had been such as to render judicial investigation necessary. In another of the controversies, that involving the assignees' right to the bankrupt's interest under the Richardson will, the assignees have now finally prevailed. Hammond v. Whittredge, cited above. It is because of the result thus secured by them that there will now be assets of the estate for division among creditors and of considerable amount. If they were opposed to compromise of this claim, their position now stands justified by the event, so far as both the above matters are concerned, yet one of the prayers of this petition for their removal is that they be ordered to desist from the prosecution of the very case last above mentioned. If I am right in the above conclusions, I see no other grounds upon which the general charge that the assignees "are acting for their own personal profit against the interest of creditors" can be held established.

The charge that the assignees have been guilty of contempt of court, except as it rests on matters already dealt with, rests only on the fact that notwithstanding the pendency of proceedings to supersede them by appointing trustees under Rev. St. § 5103, the assignees had a date set for hearing in the state court in Whittredge v. Sweetser, above cited. Upon a petition filed in this court September 27, 1901, an order was issued September 30, 1901, restraining further prosecution of that case by the assignees. On November 21, 1904, the court vacated this order. That the assignees' action amounted to contempt of court, or

was ever so regarded by the court, I am unable to believe. A contempt could not and would not have been thus lightly treated. And if the court was ever to be asked to deal with the assignees' action as a contempt, the application should have been made at the time.

It may be added, indeed, that if there was ever any ground for removing the assignees, the proceedings under this petition ought to have been continued before the court, and its decision obtained as soon as possible after the filing of the report now before me, on December 17, 1903. The question whether the assignees had been guilty of official misconduct or not ought to have been submitted to the court for settlement as soon as it was so presented that it could be so submitted. It is not a question which could properly be left in abeyance for more than three years, to be raised or not as might seem expedient. If it be said that Judge Lowell's decision on the Linscott petition in July, 1904, varied the facts as presented in the register's report, a delay of more than two years still seems to me a longer delay than should have been allowed to occur.

With all other conclusions reached by the register I agree, and none of them seem to me to require further remark. The result is that I find no cause which in my judgment renders removal necessary. The remaining question under Rev. St. § 5039, is whether there is any cause which renders removal expedient. On this question I have no doubt at all. The original petitioners for removal, if a majority in value, were by no means a majority in number of the creditors. Some of them (but without waiving the charges made in the petition) have now withdrawn from the request for removal. Some of them appear now to have no standing in the proceedings. Removal is now urged chiefly, if not solely, on behalf of Mr. Hammond, who, while he now owns the largest creditor's claim, was the person who claimed against the assignees the interest under the Richardson will, now held to belong to the estate, and indeed appears to have been their principal opponent in the various controversies with which they have had to deal. The present assignees have been acting for many years, are thoroughly familiar with the history of the proceedings in all its details, and whatever the charges against them, they are not charged with any failure in energy or diligence. It is due to them, not only that there is now to be a dividend on the creditors' claims, but also that certain of those claims which had no proper standing have been expunged. I cannot think that it would be either expedient or just to remove them under such circumstances.

The petition of Joy, also before me, was filed on November 22, 1905. It was thereupon allowed by the register. The allowance was afterward vacated, because notice under No. 34 of the old General Orders had not been given. Objections to the allowance of Joy's petition were thereupon filed by Hammond December 16, 1905. Joy denied Hammond's right to object or be heard in opposition May 4, 1906. A report of the register, certifying the question thus arising, was filed March 21, 1907.

[3] Hammond has succeeded to the rights of one creditor of the estate, and in virtue of them had a standing to oppose the allowance of

other creditors' claims or to apply for their re-examination. Joy's assignment of the Dolliver claim from Dowse was filed with the register June 18, 1901. So far as Hammond was concerned, or the prior owner of the claim he now owns, this filing was sufficient notice. The only notice expressly required by General Order 34 is notice to the creditor who originally proved. Of the rival assignment, also, of the same claim, relied on by Linscott, Hammond, or the original creditor he represents, has had notice from the time it was filed with the register, on or before May 29, 1901. If the owners of other claims ever had any standing to object to the subrogation of Joy or of Linscott to the Dolliver claim, that right has existed ever since the above dates whereon the assignments were filed upon which they respectively rely. The decision, therefore, which established the validity of Joy's assignment as against Linscott's, although they alone appeared as actual parties to the controversy in which the decision was made, binds all other creditors who had a standing to participate in it, because they might have intervened with objections to the allowance of either subrogation, had they chosen to do so. In similar proceedings, where different interests in a fund are brought into concourse, and each may claim to be heard as against every other, the determination of a controversy involving the standing of one interest concludes all the other claimants, who have had an opportunity to intervene and be heard upon the question, whether they have actually done so or not. Such a controversy is not to be reheard as many times as there are claimants. The objections now presented by Hammond deny Dowse's capacity to acquire the Dolliver claim and deal with it as its owner in these proceedings. If they had been presented upon the filing of the assignment from Dowse to Joy, in June, 1901, the questions raised could have been heard and determined in the proceedings since had between Joy and Linscott regarding the same claim, which equally involved Dowse's right to own and assign it. Evidence taken in those proceedings has been relied upon before the register in support of Hammond's petition to remove the assignees, so that his actual knowledge as to what was being litigated between Linscott and Joy is hardly open to question. Not having presented these objections for more than five years after Joy filed his assignment from Dowse, and the assignment to Dowse having meanwhile been held valid, Hammond has now, in my opinion, no standing to prosecute them.