In re SWEETSER.

(District Court, D. Massachusetts. October 30, 1914.)

No. 7811.

1. BANKRUPTCY ☞368—ASSIGNEES—DUTY.

Where the assignees of a bankrupt under Bankr. Act March 2, 1867, c. 176, 14 Stat. 517, who had continued the estate for the purpose of acquiring the bankrupt's interest in a trust fund subject to preceding life estates, refused, after the death of the last of the life tenants, to consent to their being superseded by trustees, so that the power of administration would be almost completely under the control of the majority of the creditors, and, by contesting a petition for removal, protected the rights of

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

other creditors, who were not parties to the petition, they were not guilty of any dereliction of duty, warranting denial of compensation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ☞368.]

2. BANKRUPTCY ☞272—PROCEEDINGS—DUTY OF ASSIGNEES.

Under Rev. St. § 5100 (Bankr. Act 1867), declaring that, if at any time there is not in the assignee's hands a sufficient amount of money to defray the expenses required for the further execution of his trust, he shall not be obliged to proceed unless the necessary funds are advanced or satisfactorily secured to him, an assignee in bankruptcy need not, for the protection of the estate, advance money to defend a suit.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 572, 573; Dec. Dig. ☞272.]

3. BANKRUPTCY ☞368—ASSIGNEES—DERELICTION IN DUTY.

Under Act June 22, 1874, c. 390, § 4, 18 Stat. 178, declaring that if any assignee in bankruptcy fails or neglects to well and faithfully discharge his duty to the estate he forfeits all fees and emoluments, and if he in any way wrongfully disposes of the property committed to his care he forfeits all fees or compensation for other services, an assignee in bankruptcy who had, for the protection of the estate, advanced considerable to defend a suit when not required to under the statute, and who had acted as his own legal adviser, is not, in making a payment to himself for the purpose of discharging costs and satisfying his claim for legal services, guilty of such a dereliction in duty, where on order of the court he returned the same, as to preclude any right to compensation, for, had he engaged counsel to perform such services, they would have had a lien on the estate, and the assignee acted in good faith.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ☞368.]

4. BANKRUPTCY ☞368—ASSIGNEES—RIGHT TO COMPENSATION.

Though an assignee in bankruptcy asserted a claim against the estate which, after approval by the District Court, was denied on appeal, the assignee cannot, having acted in good faith, be denied all compensation under Act June 22, 1874, § 4, on the ground that he had not faithfully executed his trust.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ☞368.]

5. BANKRUPTCY ☞368—ASSIGNEES—RIGHT TO COMPENSATION.

The assignees will not be denied compensation because they assisted a stenographer, who performed services for the estate in litigation, in presenting a claim, though the claim was reduced by the register; it not appearing that the action of the assignees was in any way fraudulent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ☞368.]

6. BANKRUPTCY ☞368—ASSIGNEES—COMPENSATION.

In such case, compensation will not be denied because, one of the assignees, having made a payment to himself, the assignees appealed from the order for return; the conduct of the assignees not being litigious or amounting to a breach of trust.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ☞368.]

7. BANKRUPTCY ☞368—ASSIGNEES—COMPENSATION.

Under Bankr. Act 1867 (Rev. St. §§ 5092, 5093), requiring the assignees to file an account every three months, the assignees of an estate which had been fully administered, save a claim against a fund held in trust for the lives of others, need not file any elaborate account, nor will their failure to file an elaborate account after receiving the fund preclude an

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

award of compensation; it appearing that the accounts were rendered in good faith, and, though not perfect, the estate was in no wise injured.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ☞368.]

8. BANKRUPTCY ☞368—ASSIGNEES—FEES OF—ADDITIONAL COMPENSATION.

Under Bankr. Act 1867, and General Orders thereunder, assignees in bankruptcy, who performed unusual services and beneficially continued the estate for a long time, are entitled to additional compensation; the act contemplating the summary conversion of the estate into money and distribution.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ☞368.]

9. BANKRUPTCY ☞368—ASSIGNEES—COMPENSATION.

Where the assignees of a bankrupt's estate, for the purpose of realizing on his vested interest in a trust fund, subject to life estates, continued the proceedings for 20 years, during which time they performed considerable services in protecting the claim and at last realized upon it, they are, under amendment to General Order 30 under Bankr. Act 1867, entitled to additional compensation beyond that fixed; this being particularly true, as the course of the assignees was most advantageous to the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ☞368.]

10. BANKRUPTCY ☞368—ASSIGNEES—COMPENSATION.

In such case, where the assignees, having received the trust fund, successfully resisted an attempt by the majority creditors to remove them and secure the appointment of trustees, the services of the assignees in such particular, being for the protection of the estate generally, were great and unusual, and they were entitled to additional compensation therefor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ☞368.]

11. BANKRUPTCY ☞368—ASSIGNEES—COMPENSATION.

Where the assignees in good faith sought to secure the expunging of claims, repeated assignments during the long course of years having left the ownership of claims in doubt, they are entitled to additional compensation for services in the matter, though the claims were not expunged.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ☞368.]

12. BANKRUPTCY ☞368—PROCEEDINGS—DISTRICT COURT.

In proceeding for the settlement of the accounts of assignees and disposition of their claim for additional compensation, the concurrence of the Circuit Judge in the allowance of extra compensation, provided for by amendment to General Order 30 under Bankr. Act 1867, may be waived by the parties, regardless of the abolition of that court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ☞368.]

In Bankruptcy. In the matter of the bankruptcy of Elbridge L. Sweetser. Final accounting by Warren C. Kyle and another, assignees. Extra compensation allowed.

Warren O. Kyle and Fred Joy, both of Boston, Mass., for assignees. Hollis R. Bailey, of Boston, Mass., for objecting creditors.

MORTON, District Judge. This matter relates to the final account of the assignees in bankruptcy of Elbridge L. Sweetser, who was duly adjudicated bankrupt on his own petition in this court on July 23, 1878, under the law of 1867, and to the petition of the assignees for an

allowance of extra compensation. John C. Hammond and others, creditors, have appeared in opposition to the account and to the allowance of the petition for extra compensation; and they, and the assignees, and other parties interested have been heard at length.

Certain items relating to the early expenses of the assignees and dividends paid to creditors were objected to because not itemized as required, and were passed at the hearing with the understanding that itemized accounts relating thereto would be submitted by the assignees to the inspection and examination of the objecting creditors. No further objections have been made to those items, and I assume that they are correct and should be allowed.

The remaining items, so far as objected to, involve matters relating to the conduct of the assignees, and may be properly considered in connection with their petition for an allowance for extra compensation, which presents the principal question at issue.

The assignees were appointed March 19, 1878, and consisted at that time of Mr. Dowse, who has continued to act as one ever since, and Mr. Dibble. Dowse, at the time of his appointment, was counsel for a firm by the name of Dolliver Bros., who had the second largest claim against the bankrupt estate, and Dibble was counsel for the Florence Machine Company, which had the largest claim against the estate, and with which Sweetser had been doing business several years. The assets of the bankrupt's estate, so far as then known, consisted of about $1,200. Dowse and Dibble administered these assets and filed an account in May, 1887. Objections to it were filed soon after. So far as appears, they were never pressed. No evidence in support of them was introduced before me. I find that that account is correct, and should be allowed.

Mr. Kyle was admitted to the bar in 1880 and opened an office in Boston. At that time his brother was treasurer of the Florence Machine Company. In the summer of 1881 Mr. Kyle was employed as counsel for the Florence Machine Company, and learned of what turned out to be a valuable vested interest in Sweetser under the will of one S. O. Richardson, which was subject to three intervening life estates. In the fall of that same year, the Florence Machine Company brought a bill in equity in the Supreme Judicial Court in Suffolk county, to reach and apply that interest in its favor, on the ground that it had not passed to Sweetser's assignees in bankruptcy. Mr. Kyle acted as counsel for the Machine Company until its dissolution in 1893, and he acted as counsel for its successor, the Central Oil & Gas Stove Company. In 1882 Dibble resigned as assignee; Mr. Kyle was appointed in his place. He informed his coassignee of the bankrupt's interest in the trust fund, and assisted Dowse in preparing a bill in equity to enforce the rights of the assignee thereto, which was duly filed in this court in September, 1882. The bankrupt's interest in the trust fund might have been at once sold out by the assignees. It was, however, of very doubtful character, was expectant on three life estates, and was claimed by another party. In view of these facts, it would at that time have brought very little, if put up for sale. The assignees therefore determined that, instead of selling out this inter-

est, they would hold it and would keep the estate open. Of the wisdom of this decision there can be no doubt.

From 1882 to the death of the last life tenant, matters, according to Mr. Kyle's statement, remained dormant. The assignees were responsible for the estate, and did whatever was necessary to hold the interest in the trust fund. They were admitted as parties to the suit pending in the Supreme Judicial Court which had been brought by the Florence Machine Company; they filed an answer therein, and from time to time they examined the records in that court and in this court, and in the probate court in Middlesex county, where the Richardson estate was in the process of settlement; and they attended to such incidental matters as came up. All parties seemed to have acquiesced in the policy of watching and waiting suggested by Mr. Kyle until the life estates fell in. Other suits were brought by Mr. Kyle for the Florence Machine Company against Sweetser, and he was busy in reference to those matters; but manifestly what he did as counsel for the Florence Machine Company can furnish no ground for extra compensation as assignee, and no such claim is here made.

The last of the life tenants died in December, 1900. The interest of the bankrupt in one-half of the trust fund, which had originally been $35,000, thereupon became complete, and he became entitled to immediate possession thereof. Up to this point all parties were in friendly relations. The legal situation at that time was, as to its important elements, as follows:

Mr. Hammond had become the owner of the claims and interests of the Florence Machine Company, the Monitor Oil Stove Company, and the Central Oil & Gas Stove Company. There was pending in the Supreme Judicial Court the bill in equity brought by the Florence Machine Company in 1882 to reach and apply Sweetser's interest under the trust fund to its claim against him, in which Mr. Hammond had become the plaintiff and the assignees had appeared as adverse parties. Certain assignments of his interest in the trust fund, made by Sweetser while this suit was pending, had also become vested in Mr. Hammond. Subsequent to the first bankruptcy, Sweetser had given new notes to the Florence Machine Company for the same debt which it had proved against him in that bankruptcy. These notes had passed to Mr. Hammond with the rest of that company's claim against Sweetser. Mr. Hammond therefore had at this time and was asserting, first, the equitable attachment in the suit to reach and apply the fund to the Florence Machine Company debt; second, the assignment from Sweetser of all his interest in the trust fund; third, the claim in bankruptcy which had been proved against the Sweetser estate; and, fourth, the claim upon the new notes made by Sweetser after the first bankruptcy. There was no property whatever in the estate, and, if the Hammond claim to the trust fund should be established, nothing to pay the expenses of the litigation by the estate in resisting said claim. The bill in equity brought by the assignees in the United States District Court in 1882, asserting their right to the Sweetser interest in the trust fund, in opposition to the rights asserted by the parties through whom Mr. Hammond was claiming, was also pending. Just before the death of

the last life tenant, Sweetser had gone again into bankruptcy under the act of 1898 (30 Stat. 544, c. 541), and was endeavoring to defeat the right of his first assignee in bankruptcy to the trust fund. His trustee under the second bankruptcy was also claiming the fund. Almost 23 years had elapsed since the bankruptcy, and most of the claims proved in bankruptcy against Sweetser were in the hands of other persons than the original creditors, a substantial part of them having been purchased upon speculation for a very small proportion of their face value, and some of them had been paid by Sweetser or otherwise extinguished.

[1] Upon the death of the life tenants, Mr. Hammond was desirous of an immediate settlement, and suggested to the assignees that they should be superseded by trustees, in accordance with the provisions of the law of 1867. This would give greater flexibility and more discretionary power in the settlement of the estate than were possessed by the assignees; it put the administration thereof almost completely under the control of a majority of the creditors, and Mr. Hammond and his associates had such a majority. This suggestion was made in furtherance of a plan for a distribution of the estate which involved paying a substantial part of it to other persons than those entitled under the first bankruptcy. (See findings of register on petition to remove.) The assignees objected to the arrangement. Why they did so is in controversy. Mr. Hammond claims that it was because he would not agree to an allowance of $2,000 for their fees. They claim —and they are supported in their view by Mr. Hayes, whose opinion is, I think, entitled to much weight—that the course proposed was not fair to the creditors, other than Mr. Hammond. The situation was plainly one in which the interests of Mr. Hammond and of the estate were seriously in conflict. The objecting creditors made this same contention upon their petition to remove the assignees; and it was decided in favor of the assignees by the register, by the District Judge, and by the Circuit Judge. See opinion of Dodge, J., June 19, 1907, 240 Fed. 167. The only question about the matter which now needs to be passed upon is whether the assignees were derelict in their duty in opposing the appointment of trustees. It is not established, and I do not find, that they were.

This refusal of the assignees to agree to the appointment of trustees brought upon them litigation of an amount, persistence, and virulence fortunately rare in the history of the law. The case in different phases appears nine times in the Federal Reporter, twice in the United States Supreme Court Reports, and once in the Massachusetts Reports, and there are several long opinions of this court which were not published.[1]

[1] The reported decisions are as follows: Hammond v. Whittredge, 204 U. S. 538, 27 Sup. Ct. 396, 51 L. Ed. 606 (1907); Kyle v. Hammond, 225 U. S. 692, 32 Sup. Ct. 406, 56 L. Ed. 1260 (1912); In re Sweetser (D. C.) 128 Fed. 165 (1904); Dowse v. Hammond, 130 Fed. 103, 64 C. C. A. 437 (1904); In re Sweetser (D. C.) 131 Fed. 567 (1904); In re Sweetser (C. C.) 157 Fed. 567 (1907); In re Sweetser (C. C.) 168 Fed. 1018 (1909); In re Kyle et al., In re Sweetser (C. C.) 181 Fed. 617 (1910); In re Kyle et al., In re Sweetser (C. C.) 185 Fed. 219 (1910); In re Sweetser, Kyle et al. v. Hammond, 186 Fed. 989, 108 C. C. A. 659 (1911); Kyle et al. v. Hammond et al., 192 Fed. 559, 113 C. C. A. 31 (1911); Whittredge v. Sweetser, 189 Mass. 45, 75 N. E. 222 (1905).

In considering the complaints of Mr. Hammond and the creditors acting with him over the delay and expense caused by litigation in the settlement of this estate, it is to be borne in mind that they themselves began unfounded litigation and were the first to exhibit personal animosity.

The unnecessary and unprofitable litigation began in March, 1909, with a petition by Mr. Hammond and other creditors for the supersession of the assignees and the appointment of a trustee. It was filed shortly after the assignees had refused to consent to such a course. A necessary step in securing such action was a vote of three-fourths of the creditors. A meeting of the creditors was accordingly called. It developed, as was to be expected, great uncertainty as to the ownership and validity of many claims, and as to who, if anybody, was entitled to vote thereon. Many hearings were necessary to determine those questions. The effort to supersede the assignees failed, because of the lack of the necessary vote by creditors, and because of the decision by the District Court declining to supersede them without it. Two petitions to remove them for misconduct were also filed by Mr. Hammond and other creditors, and were heard and denied by the District Court. The conduct of the assignees up to the filing of the latter of these, viz., March 6, 1907, was criticized and attacked in those proceedings on substantially the same ground as here, and the decision was in their favor. The creditors carried the matter to the Circuit Court, and the proceedings occupied a considerable time; the second petition to remove not being finally disposed of till November, 1907. No matters of any importance relating to the conduct of the assignees prior to March 6, 1907, have been alleged in these proceedings which were not heard and determined in favor of the assignees upon the petitions to remove.

The trustee of the Sweetser fund filed in the Supreme Judicial Court, early in 1901, a petition for instructions. The assignees were made parties to it. This made three proceedings pending at the same time for the purpose of ascertaining the ownership of the fund. The assignees, while the proceedings looking to their supersession or removal, and to the expunging of the Florence Machine Company claim hereafter referred to, were still pending, endeavored to have the petition for instructions, which was regarded as the best way in which to settle the ownership of the fund, set down for hearing. Mr. Hammond objected, and secured an order from this court forbidding them to do so, which remained in force for several years. Being a party to the equity proceedings, Mr. Hammond could himself have had the suit set down for hearing; but he did not do so, and he has nothing to complain of in that delay. After the proceedings to remove or supersede the assignees had failed, and it became settled that they were to close the estate up, the order forbidding them to have the petition for instructions marked for hearing was discharged, and the petition was heard. It was reserved for the full court, by which it was decided in favor of the assignees in bankruptcy and against Mr. Hammond. He then took a writ of error to Washington, and the matter was not decided there against him until 1907. After this the trustee under the will, who was also speculating in claims against the Sweetser estate, raised further ques-

tions, and it was not until February 2, 1908, that the final payment on the principal was made. Even then there was litigation between him and the assignees over certain items in his account, and it was almost a year later, January 22, 1909, before the final payment from him was received.

[2] In the meantime, in April, 1901, the assignees had instituted proceedings to have the Florence Machine Company claims expunged. That matter went to the Court of Appeals, which refused to expunge the claims, but held that it was reasonably incumbent upon the assignees to raise the question.

Mr. Hammond, the owner of that claim, was thus left free to continue on the outside his efforts to secure the trust fund for himself, and on the inside, as a creditor, his attacks on the assignees who were opposing his efforts. There was not a dollar in the Sweetser estate, and no certainty that there ever would be; and the assignees not only devoted a large amount of time to its protection, but also spent substantial amounts of their own money which were necessary for the litigation, with no certainty that they would ever be paid either for the time or their money. Plainly their duties as assignees required them to go to no such lengths. The statute explicitly provided that:

"If, at any time, there is not in his (the assignee's) hands a sufficient amount of money to defray the expenses required for the further execution of his trust, he shall not be obliged to proceed therein until the necessary funds are advanced or satisfactorily secured to him." Rev. St. § 5100, cited Bump on Bankruptcy (10th Ed.) p. 673.

That anything has been obtained for the creditors is, it seems to me, due to the extraordinary service and risks undertaken by the assignees, and to their persistence in the face of great difficulties. In the opinion of the District Court on the petition to remove the assignees, it is said:

"It is due to them, not only that there is now to be a dividend on the creditors' claims, but also that certain of those claims which have no proper standing have been expunged." Opinion of Dodge, J., June 19, 1907.

Various other matters which it is not necessary to state in detail required a great deal of time on the part of the assignees. There appear to have been more than 150 meetings and adjourned meetings of creditors between March, 1901, and April, 1911.

[3-6] After having collected from the trustee under the will, Mr. Kyle, on October 26, 1907, and February 1, 1908, paid himself, from the funds of the estate, without any order of court, on account of his services and disbursements as attorney for the assignees, sums aggregating $4,252.76. In June, 1909, Mr. Hammond filed a petition asking that the assignees be ordered to return all this money, pending a final settlement of their account and the determination of the amount due them. The attack upon the assignees in this petition was inexcusably virulent. If the creditors had aimed only at a prompt settlement of the estate, they would have proceeded very differently. They were led to take the course they did in the hope of embarrassing and injuring the assignees, if they should be ordered to return the money and should be unable to do so. The facts in relation to this matter are so fully stated in the opinion of Judge Dodge thereon (dated February 11, 1910)

that it is not necessary to restate them. Judge Dodge ordered the money returned. He says, however:

"I find no reason in what appears for charging Mr. Kyle with any bad faith in what he has done, or with any design to obtain an advantage to which he did not believe himself entitled. He has stated at the hearing that he was ready to comply with any order which might be made upon the petition. During the litigation referred to, which, upon more than one previous occasion, has been brought under the notice of the court in connection with questions from time to time raised in this case, it may well be supposed that he has been obliged to make advances at the cost of considerable inconvenience to himself, and to expend a considerable amount of time and labor. In a case involving no controversy between himself and any creditor of the estate, the course pursued regarding the money here in question, though irregular, might perhaps have been acquiesced in as depriving no one of any substantial right. There has been such acquiescence, as stated above, in his payment of $874.81 out of this money to the register and for sundry expenses. Against objection such as is here made, it is impossible for the court to approve any disposition of the money other than that prescribed by law."

Lowell, Circuit Judge, said in relation to this same matter:

"The point of law involved in the decision of the District Court and of this court [the United States Circuit Court] concerning the assignees' liability to the bankrupt estate is important and doubtful." In re Kyle et al., 185 Fed. 219.

I agree with these conclusions. There was no intentional misconduct on Mr. Kyle's part. From the order directing the return of the money, the assignees endeavored to appeal to the Court of Appeals, and later to the United States Supreme Court, by both of which courts the matter was dismissed for lack of jurisdiction. Until about March, 1910, other litigation which made it impossible to close the estate was pending. After that, until November, 1912, the principal, if not the sole, cause of delay was the proceedings to compel the return of this money. The assignees were wrong in taking these appeals, and no additional compensation is claimed in respect to those proceedings.

Act June 22, 1874, § 4 (quoted in Bump on Bankruptcy [10th Ed.] p. 254), on which, so far as the statutes are concerned, the objecting creditors rely, provides as follows:

"If any assignee fails or neglects to well and faithfully discharge his duties in the sale or disposition of property he forfeits all fees and emoluments to which he might be entitled in connection with such sale. If he in any manner in violation of his duty unfairly or wrongfully sells or disposes of, or in any manner fraudulently or corruptly combines, conspires or agrees with any person or persons with intent to unfairly or wrongfully sell or dispose of the property committed to his charge, upon proof thereof he forfeits all fees or other compensation for any and all services in connection with the estate."

The objecting creditors contend that:

"The assignees in the present case violated the above-cited statutory provisions by agreeing together and with their attorney, Fred Joy, Esq., that he should hold the Dolliver claim for his own personal benefit; also by assisting the stenographer, Wilson, to present a claim of $1,635 for services, which was largely unfounded, as was found by the register; also by allowing Mr. Kyle to take over $4,200 for his own use in violation of Rev. St. U. S. § 5059 (Bump [10th Ed.] p. 562), and in violation of General Order XXVIII (Bump [10th Ed.] p. 885)."

The matter relating to the Dolliver claim above specified was brought before the court on the petition by these creditors to remove the assignees, filed March 6, 1907, which was heard and denied by Judge Dodge in an elaborate opinion dated June 19, 1907. I fully agree with his statements and findings of fact therein contained. Mr. Kyle never had any interest in the Dolliver claim. Mr. Dowse acquired it on absolute good faith. (See opinion of Lowell, J., July 18, 1904, 131 Fed. 567.) Judge Dodge thought he had a right to do so; the Circuit Court held differently, but ordered the claim paid from the estate in the amount, with interest, which Mr. Dowse had paid for it—a result which could hardly have been reached if the claim was tainted with fraud. It does not seem to me that Mr. Dowse's mistake as to the law was misconduct disentitling him and his coassignee to compensation, nor that, as contended by the objecting creditors, he was litigious in insisting on his supposed rights, and in not recognizing as plainly untenable a view of the law which was declared sound by the District Court, even though its decision was reversed on appeal. The assignees were not guilty of misconduct disentitling them to compensation in respect to the Dolliver claim.

The objection based upon the conduct of the assignees in reference to the Wilson bill arose from a difference of opinion between them and the objecting creditors as to the proper compensation of the stenographer, Wilson. The bill was allowed by the register for a smaller sum than the assignees thought justly due; but so far as appears there was nothing corrupt or fraudulent in their action in relation to it.

At the time when Mr. Kyle paid himself the $4,252.76 above referred to, he and Mr. Dowse had been defending the estate and themselves against Mr. Hammond and the creditors acting with him for about seven years, during which they had devoted much time and advanced substantial amounts of money in its interest. If they had hired somebody else as counsel, he would have had a lien on the proceeds of the judgment for his fees and disbursements. There was nothing per se fraudulent or plainly wrong on Mr. Kyle's part in supposing that he had the same right. The register evidently saw nothing heinous in it, for he took part of the money in payment of his fees under circumstances which notified him that the statutory requirements were not being observed. This payment to him is not now objected to. The whole matter was one as to which there could be, as Judge Lowell plainly intimated, an honest difference of opinion. The assignees were not bound to lie down under the false charges made upon their integrity. They were entitled to submit the question whether they should refund the money to the District Judge; and they acted strictly within their legal rights in the appeals which they endeavored to take from his decision. It would be going a good way to hold that a party defendant is litigious for appealing from decisions against him. It seems to me that the objecting creditors, having gone about the matter in the roughest possible fashion, have no just ground for complaint because the assignees fought back to the last ditch. The money was eventually restored, with interest at 2 per cent., as ordered by the court on November 21, 1912. The rate at which interest should be paid was the

subject of a hearing before Judge Dodge, and is fixed by his opinion dated October 11, 1912. The creditors suffered no injury, except the delay in settling the estate. It does not seem to me that what the assignees did was so wholly inexcusable as to amount to misconduct involving a forfeiture of all compensation, or as to bring them within the terms of Act June 22, 1874, § 4, above quoted.

[7] The objecting creditors also urge that the assignees failed to keep proper books of account and to file accounts as ordered by the Register. The law required an account to be filed every three months, and books of account to be kept by assignees. Rev. St. U. S. §§ 5092, 5093 (cited Bump on Bankruptcy [10th Ed.] p. 568). The assignees kept sufficient book entries to show with substantial accuracy the condition of the estate. The details of certain items of expense paid by the assignees out of their own pockets before there was any money in the estate from the trust fund were not shown with exactness. The estate, consisting at first merely of a claim against the Richardson trustee, and later of a sum of money on deposit, required no elaborate or special books of account. The failure of the assignees to make more detailed entries was in no sense fraudulent, or done with a view to conceal facts. Undoubtedly assignees ought to keep accounts showing to a cent their expenses; but an innocent and inadvertent failure in a matter of detail, out of which no harm has come, ought not to be penalized.

On May 14, 1908, the assignees filed a report saying that they had received $20,127.57, and that they had a further claim against Whittridge, trustee, for $500, and that they intended to claim $15,000 for their own services and expenses. This was not in the form of an account, and was objected to by Mr. Hammond and others. On June 4, 1908, a dividend of 37 per cent. was ordered on the strength of the assignees' report then on file, and was duly paid. On July 1st the assignees filed a report, stating the gross receipts and the gross payments made to Mr. Kyle for services and expenses, and on October 2, 1908, a further report of the same general character. Mr. Hammond made objections, based on the lack of dates and items as to certain payments. The conduct of the assignees certainly did no injury to the estate. If the reports were substantially deficient, it devolved upon the creditors to raise the question and try the matter out promptly. The language of Judge Dodge in his opinion of June 19, 1907, upon an analogous matter in this same case is applicable here:

"The question whether the assignees had been guilty of official misconduct, or not, ought to have been submitted to the court for settlement as soon as it was so presented that it could be so submitted. It is not a question which could properly be left in abeyance for more than three years, to be raised, or not, as might seem expedient." Dodge, J., June 19, 1907.

I do not find that the assignees have been guilty of misconduct disentitling them to compensation on account of their alleged failure to keep proper books of account and to file proper reports and accounts.

I have considered the various objections (57 in number) to the allowance of compensation contained in the answer of the objecting creditors, and also the objections to the disputed items in the account. It is impracticable to discuss each of them in detail. Except as to the effect upon the assignees' right to compensation of Mr. Kyle's

act in taking the $4,252.76, the objections, so far as they are substantial and serious, present questions which have already been fully heard by this court and have been decided against the objecting creditors. It is sufficient to say that I do not find that the assignees have been guilty in any particular of such misconduct as would, either under the statute or the general law, suffice to deprive them of compensation or would require their account to be surcharged, or payments therein scheduled to be disallowed. The account of the assignees is allowed as filed, including the statutory compensation stated therein.

[8, 9] As to additional compensation:

Both assignees have filed petitions for additional compensation. That of Mr. Kyle is in the main, except as herein otherwise indicated, a correct account of their administration of the estate, as I view it. He requests an allowance of $9,000 for himself, $1,500 for Mr. Joy for legal services rendered to the assignees, and $500 for Mr. Dowse. According to the itemized schedule submitted by Mr. Kyle of his work on their estate between December, 1900, and June, 1909, he attended 198 hearings before courts, judges, and the register, and had besides about 375 consultations of sufficient importance to be entered upon his books. He apparently advanced to the estate, before there was any certainty of his being repaid, about $375. The petition of Mr. Dowse requests an allowance to himself of $2,460.50 as additional compensation, $3,000 to Mr. Joy for legal services to the assignees, and $350 to Mr. Jackson for similar services.

Mr. Dowse's bill contains only three items, viz., 34 years' services as assignee at $50 per year, $1,700; services in the litigation over the trust fund, $750; cash paid United States marshal, $10.50. According to the itemized schedule submitted by Mr. Joy of his services as counsel for the assignees between April, 1901, and June, 1909, he attended about 113 hearings and had about 276 consultations.

Mr. Jackson's bill covers various conferences, preparing papers, attending and arguing at two hearings before the court and one before the register in July, August, and September, 1909, while Mr. Joy was absent. His bill does not state on what matters he was employed. Apparently they related in part to Mr. Dowse's assertion of interest in the Dolliver claim, to Mr. Hammond's objections to the reports or accounts of the assignees, and to his petition for the return of the money taken by Mr. Kyle. A substantial part of the services would seem to have been more properly chargeable to Mr. Dowse personally than to the estate.

The amount of claims on which dividends are to be paid are about $11,000; the balance on hand, as shown by the assignees' final account, is $12,656.04. The statutory fees of the assignees amount to about $850. As before stated, a dividend of 37 per cent. was paid to creditors in 1908.

The act of 1867 contemplates a speedy liquidation of the bankrupt's property. His assets are to be converted into cash in a summary manner and distributed among his creditors, and the estate closed up. The statutory compensation is based on that idea. The fees allowed by the act, and the General Orders in force under it, are not intended to

cover any such extraordinary amount of work and time as this case has required. The assignees are entitled to additional compensation in excess of the statutory fees.

Mr. Kyle devoted far more work and time to the estate than did Mr. Dowse, and seems to have been the active one of the assignees. It is not clear on the evidence what part Mr. Dowse took in the various matters before referred to; I infer that it was comparatively slight, and that Mr. Dowse left the care of the estate largely to Mr. Kyle, sharing the responsibility, and perhaps assisting to some extent on the most important matters.

The principal matters as to which the assignees are entitled to compensation may be summarized and restated as follows:

1. Their services in holding fast to, and obtaining, the bankrupt's interest in the trust fund: This includes the plan adopted of waiting until the life estates fell in, instead of selling out the doubtful claim of the bankrupt for what it would bring; keeping hold of the claim for almost 20 years, during which time they were responsible to the creditors for safeguarding the estate, and seeing that the rights of the assignees were not lost (that this responsibility was real is shown by the contention which Mr. Hammond made in the state court that the rights of the estate had been lost by laches); the litigation in the state and federal courts by which the right of the assignees to the trust fund was finally established; and the proceedings, supplementary in character, upon the trustees' account in the probate court and in the Supreme Judicial Court. This part of the assignees' work is marked by sagacity, courage, persistence, and devotion to their trust of an unusual character. It involved great and unusual care and exertion on their part, for which, under the amendment to General Order 30 under the act of 1867, they are entitled to additional compensation beyond that fixed by the statute.

[10] 2. Their services in resisting the petitions to supersede them by trustees and to remove them: The petition for the appointment of trustees to administer the estate involved taking a vote of the creditors. As before stated, great difficulty was experienced in taking such a vote, by reason of the uncertainty as to who owned and was entitled to vote upon many of the claims proved. Some claims had been paid by the bankrupt subsequent to the first bankruptcy, or had been otherwise extinguished. The estate benefited by the expunging of about $1,000 of such claims. Other claims had been more than once assigned. A great deal of time was required, and many hearings, to determine the ownership of and voting rights on various claims. This work on the part of the assignees was necessary, but it did not add value to the estate commensurate with the expense. A certain amount of such work is required in many bankrupt estates, and to that extent, at least, is not "unusual." It seems to me that exertion may be "great and unusual" in amount as well as in character, although there may be some doubt upon this point in view of In re Many et al., 17 N. B. R. 429, Fed. Cas. No. 9,053. For the work required of the assignees in settling the ownership and validity of claims beyond what was "usual," I think that they are entitled to

additional compensation, but at a lower rate than for work more beneficial to the estate.

The petitions filed by Mr. Hammond and his associates to remove the assignees charged misconduct of a serious character, and the assignees were fully warranted in resisting both. The Circuit Court, which affirmed the judgment of the District Court dismissing them, said:

"The circumstances of the present case show no ground for doubting the present assignees."

The assignees did not institute the proceedings which made it necessary to take a vote of the creditors, and therefore to undertake the long investigation as to the voting rights on claims; nor did they institute the proceedings looking to their removal. The expense of both these sets of proceedings, useless and unfounded as they turned out to be, is attributable to the creditors, who now object to the allowance of additional compensation on account of the labor to which they themselves have put the assignees. The work of the assignees in resisting these petitions to remove them was "great and unusual exertion," for which they are entitled to additional compensation.

[11] 3. The services of the assignees in endeavoring to expunge the Florence Machine Company claim: This matter was sharply contested at every point and reached the Circuit Court of Appeals. The assignees failed in their efforts to have the claim expunged. It is strongly urged by the objecting creditors that the assignees are not, therefore, entitled to compensation for the work done on this matter, and I am asked to disregard the expression in the opinion of the Court of Appeals (Dowse v. Hammond, 130 Fed. 103, 64 C. C. A. 437) that:

"Under the circumstances it was reasonably incumbent on the assignees, who are now the appellants, to bring the facts to the attention of the court—both to the District Court and to the appellate tribunal."

But it seems to me that I ought not to disregard this statement of the Court of Appeals, with which, if not bound by it, I entirely agree, and that the assignees are entitled to compensation for their services in respect to the effort to expunge this claim. The situation created by it, as hereinbefore stated, was decidedly "unusual." It seems to me that the work of the assignees upon this matter may fairly be called "great and unusual exertion" in an effort to protect the estate.

Considering all the facts and evidence, I find and rule that the assignees are entitled to additional compensation beyond that allowed by statute in the amount of $6,750, to be apportioned; $6,250 to Mr. Kyle, and $500 to Mr. Dowse, and that they be allowed the further sum of $2,000 for counsel fees, of which $1,750 is for the services of Mr. Joy, and $250 for those of Mr. Jackson. In making these allowances, I have assumed that the statutory compensation would be equally divided between the assignees, and I have taken into account the sums received by Mr. Dowse under the first account. I have reduced the amount which would then have been allowed to Mr. Kyle on account of the delay in the settlement of the estate caused directly and indirectly by his taking the $4,256.

[12] Before the hearings began, it was agreed by all parties that the District Judge alone should hear and determine the matters in controversy, subject to all rights of appeal from his decision. In view of this agreement, the concurrence of "the Circuit Judge" in the allowance of additional compensation, as provided in amendment to General Order XXX, is unnecessary, even if otherwise required, now that the Circuit Court has been abolished and its powers transferred to the District Court.

The objecting creditors have requested 23 findings of fact. I have so fully indicated in the foregoing opinion my findings of fact and rulings of law that it seems unnecessary to pass upon each of these requests in detail. I give such of them as are contained in or are consistent with the foregoing opinion; the others I refuse. I am indebted to counsel for the objecting creditors for his thorough and painstaking brief and chronological statement of facts.